1788.        1. That *one* report is made in *two* actions, *severally* referred.

2. That the Referees filed a supplementary report without the knowledge of the Defendant, at the instance of the Plaintiffs.

3. That the first report is *on condition*, and therefore the Referees have mistaken a plain point of law; the second report being made after their authority had expired.

4. That the promissory notes for which the actions were brought, are not in the Plaintiffs hands, but assigned for a valuable consideration, and, therefore, there is no legal cause of action.

The exceptions being opposed by *Fisher* for the Plaintiffs, and supported by *Ingersoll* and *Dallas* for the Defendant, THE COURT seemed clearly of opinion, that the *first* report could not be maintained ; that the supplementary report was irregular ; and that the rule of reference to report to *next term*, did not authorise the issuing executions upon the report into office during the vacation (particularly without notice to the Defendant) although a term had intervened between the entering of the rule, and the appointment of the Referees.

No opinion was given on the other points, but the execution and report were, for the above reasons, set aside, and the actions, by consent, referred *de novo*.


## STARRETT's Case.

*H*ENRY STARRET, while attending the Court as a suitor, was taken by a *Ca. Sa.* and *Chambers* moved that he might be discharged from the arrest, citing 4 *Bac.* 421. 3 *Bl. C.* 289. 2 *Stra.* 1094. 1 *Barn.* 17.

*Yeates* and *C. Smith* opposed the motion, and contended, that there was a distinction between an arrest on *mesne*, and on *judicial*, process ; for, though, in the former case, the Court would discharge a suitor, witness, &c. from an arrest made during an attendance upon them, yet, in the latter, they would not, because the party would afterwards be remediless. *Wood's Inst.* 503. 600. 4 *Com. Dig.* 475. 11 *Mod.* 234. 252. There is, likewise, another reason: the *Capias* on *mesne* process might be taken out merely on a suggestion ; but in *judicial* process, the debt is certain, and fixed by the judgment of the Court.

*Chambers* and *Hartley*, in reply. The protection of suitors &c. is established to promote an equal administration of justice, and to prevent the oppression of a rich and powerful man, over a poor one who is soliciting justice. There is no express authority that extends the doctrine to this case; but in 4 *Com.* 575. *tit. Priv.* it is laid down, that an execution shall not be discharged, yet, if the party who procured it, will not consent to a discharge, he shall himself be committed. The books cited in *Comyns, Crompton,* and *Wood's Inst.* are of little authority.

M'KEAN

M'KEAN, *Chief Justice.*—*Wood* is a writer of great authority, and frequently cited with respect in *Westminster-Hall.* In the case before us, the execution has regularly issued, upon a judgment regularly obtained; and although we should certainly protect suitors, witnesses, and jurors, from an arrest on *mesne* process, during their attendance upon the Court, and for a reasonable time in coming and going, yet no case has been shewn, which will justify our interference, to discharge a man taken *in execution* on the ground of such a protection. It is, indeed, the privilege of the Court that is infringed; and, it is discretionary, to grant it on some occasions, and to refuse it upon others.

BY THE COURT :—The prisoner must be remanded. *

## RESPUBLICA *versus* SPARHAWK.

THIS was an appeal from the *Comptroller General's* decision, on the trial of which, by consent of the *Attorney General, Sparhawk* was considered as Plaintiff.

There was a verdict and judgment *nisi* for the Commonwealth, when *Ingersol* obtained a rule to shew cause why a new trial should not be granted.

The case was this :—Congress, perceiving that it was the intention of the *British* army to possess themselves of *Philadelphia,* and being informed that considerable deposits of provisions &c., were made in that city, entered into a resolution on the 11th of *April,* 1777, that " a Committee should be appointed to examine into the truth of their information; and, if it was found true, to take effectual measures, in conjunction with the *Pennsylvania* Board of War, to prevent such provisions from falling into the hands of the enemy,"

On the 13th of the same month, the *Pennsylvania* Board of War, in aid of this resolution, addressed a circular letter to a number of citizens in each ward of the city, requesting them " to obtain from every family a return of the provisions &c. then in possession, and the number of persons that composed the families respectively, in order that proper measures might be pursued for removing any unnecessary quantity of supplies to a place of security." At the same time, it was mentioned, that " this proceeding was not intended to alter or divest the property in the articles removed; but, on the contrary, that the same should be at all times liable to the order of the respective owners, provided they were not exposed to be taken by the enemy."

That no precaution might be omitted upon this occasion, the *Pennsylvania* Board of War, on the succeeding day, desired General *Schuyler* to prevent the introduction of further supplies, and to adopt the most effectual means for preventing the departure of the waggons which were then in the city, and for procuring as many more as would

---

* Determined at *Sunbury.* N. P. on the 11th of *November,* 1788, before the CHIEF JUSTICE, and Mr. *Justice* RUSH.